Hon. ROUSSEAU A. BURCH,
Hon. HENRY F. MASON,
Hon. SILAS W. PORTER,  } Justices.
Hon. JUDSON S. WEST,
Hon. JOHN MARSHALL,
Hon. JOHN S. DAWSON,

No. 23,488.

C. P. BAXTER, *Appellant,* v. THE CHERRYVALE OIL COMPANY et al.,
*Appellees.*

#### SYLLABUS BY THE COURT.

1. MORTGAGES—*On Leasehold Interest in Oil Lands—Mechanic's Lien Statements on Same Land—Priorities.* A written contract was entered into between oil-well drillers and an oil company to drill two wells. Shortly before the wells were completed, the oil company gave a mortgage on its leasehold interests. At that time visible development showed two wells, one completed and one not quite finished. Under a verbal arrangement made after the mortgage had been executed the parties to the written contract agreed that other wells might be drilled under the terms of the first contract. *Held,* that the subsequent verbal arrangement could not be tacked to the first contract so as to give priority over the mortgage to liens for work performed in drilling other wells.

2. SAME. A supply company agreed to give an oil company a line of credit. The oil company made purchases of material from time to time without any contract to purchase additional material and the supply company was under no obligation to furnish more. Each purchase was a separate transaction. *Held,* that as each contract was a separate one, the furnishing of material under different contracts after the execution of the mortgage could not be tacked to the prior contract so as to give priority over the mortgage to the liens for additional material.

Appeal from Montgomery district court; JOSEPH W. HOLDREN, judge. Opinion filed July 8, 1922. Reversed.

*James A. Allen,* and *John J. Jones,* both of Chanute, for the appellant.

*Thurman Hill,* and *Chester Stevens,* both of Independence, for the appellees.

The opinion of the court was delivered by

PORTER, J.: C. P. Baxter loaned $10,000 to the Cherryvale Oil Company and took its note and a mortgage on its leasehold interests in certain lands. In an action to foreclose the mortgage cross-petitions were filed by a number of defendants setting up mechanics' liens. Judgment was rendered foreclosing the mortgage and the liens, and giving priority over the mortgage to the liens.

The plaintiff appeals from a judgment giving priority to two of the liens: that of E. M. Dack & Son for $1,127.11 and the Beeler & Campbell Supply Company for $1,937.01.

In their cross-petition Dack & Son alleged that on the 11th day of February, 1918, they entered into a written contract with the oil company to drill two wells, described as wells 5 and 6; "that after the work as specified in said agreement had been done and performed by these defendants, it was verbally agreed that the terms set forth and specified in said written agreement should apply to all work and labor done and performed by said copartnership."

The mortgage was executed on March 25. At that time the visible development showed two wells; one that had been shot and cleaned out, and the other drilled but not shot. Several other wells were commenced and some completed under the verbal, arrangement made after Baxter's mortgage had been executed and after he had paid out of the proceeds thereof Dack & Son's claim for drilling the two wells called for in the written contract. Mr. Dack testified that Reese, who represented the oil company, came to see him and wanted to know if it would be all right to go ahead "and drill on the contract just the same as they had been." Baxter had already paid the boys for one well. "I told him it would be all right if the boys seen fit to do that."

It appears from the record that Dack & Son's claim to the extent of $275 was a valid lien for the work performed in the completion of wells 5 and 6. In attempting to establish a lien for the other wells they rely upon the established rule that a mechanic's lien has priority over a mortgage if the furnishing of the work or material was commenced before the mortgage was executed, and insist that the situation is the same as though a contract had been made for the erection of buildings or dwelling houses and the foundations had been commenced when the mortgage was executed. We think

that doctrine cannot be applied to the facts here, except as to the two wells contracted for prior to the execution of the mortgage. If there had been two buildings contracted for and the work of building commenced prior to the execution of the mortgage, and the owner and the contractor had made an oral arrangement after the execution of the mortgage that a number of other buildings should be erected on the same tract of land upon the terms embraced in the original contract, it would hardly be contended that the subsequent arrangement, by some fiction of law, could be tacked to the first contract so as to give priority over the mortgage to liens for labor and material for the additional buildings. Under the statute the contract for the two wells and the commencement of the work thereon prior to the mortgage entitled the material men to a prior lien as against the mortgagee. But the force of the contract ended with the construction of the wells provided for. It follows that Dack & Son were entitled to a lien to the extent only of $275 for the material shown to have been furnished in the completion of wells 5 and 6.

The Beeler & Campbell Supply Company relies upon an arrangement with Reese, manager for the oil company. He went to the supply company and asked for a line of credit, stating he was going to drill a number of wells. They agreed to give him credit. He did not arrange to buy any specified quantity of material from the company; just sent in and got what he wanted; he was at liberty to go to any other supply company and buy such materials as he saw fit, and was under no obligation to purchase anything further from the Beeler & Campbell Supply Company. For instance, the first purchase, which was made on March 2, amounted to $153.15. On March 5 two small items of material were purchased and the transaction as to that purchase closed. Again, on March 13, there was another purchase. The total amount of all the purchases made prior to plaintiff's mortgage was $1,398.03. Some payments had been made on the purchases. It appears that each transaction with the supply company was a separate and distinct one, each involving a separate contract; with each purchase the transaction ended. It has been held that contracts for purchases at various times cannot be tacked together for the purpose of extending the time in which to file a lien statement. In 27 Cyc. 144, it is said:

"Where labor or materials are furnished under separate contracts, even though such contracts are between the same persons and relate to the same

building or improvement, the contracts cannot be tacked together so as to enlarge the time for filing a lien for what was done or furnished under either, but a lien must be filed for what was done or furnished under each contract within the statutory period after its completion."

In *Chadwick v. Hunter*, 1 Manitoba, 39, it was held that where materials are furnished for a building from time to time, as ordered, without any contract to supply them, each sale is a separate transaction and the lien statement must be filed within the statutory period thereafter. The same rule is, by analogy, applicable to the point under discussion here, although the law permits filing of a single claim or statement embracing material furnished under separate contracts if filed within the statutory period after the completion of each contract. (27 Cyc. 144, note.) The lien in this case had its inception in the contract for the purchase of the material. Each being a separate contract, the subsequent furnishing of material under a different contract could not be tacked onto the prior contract.

The court erred in giving priority to the full claim of Dack & Son, and that judgment is reversed with instructions to allow their claim to the extent of $275.

The judgment in favor of the Beeler & Campbell Supply Company is reversed. Some confusion appears in the abstract with respect to the exact amount to which the Beeler & Campbell Supply Company is entitled. If the parties cannot agree as to the balance due the supply company at the time of the execution of the mortgage, the court is directed to find the amount and allow priority to that extent.