No. 27,857.

The Midwest Lumber Company, *Appellee*, v. O. L. Brinkmeyer
et al., *Appellants*.

(264 Pac. 17.)

SYLLABUS BY THE COURT.

1. Mechanics' Liens—*Instructions*. The proceeding considered in an action to
foreclose a mechanic's lien, and held to disclose no function for instructions,
requested and refused, to perform.

2. Same—*Estoppel*. Pleading and proof considered, and held insufficient to
estop plaintiff from enforcement of the lien.

Appeal from Graham district court; Charles I. Sparks, judge. Opinion
filed February 11, 1928. Affirmed.

*James O. McVey,* of Hill City, and *C. L. Thompson,* of Hoxie, for the appellants.

*J. S. Parker* and *W. L. Sayers,* both of Hill City, for the appellee.

The opinion of the court was delivered by

Burch, J.: The action was one by the lumber company to fore-close a mechanic's lien on land owned by the Brinkmeyers. Plaintiff recovered, and the landowners appeal.

Brinkmeyer let a contract to Hildebrand to remodel Brinkmeyer's dwelling house. Hildebrand procured material of the lumber company. In the lumber company's account was an item of three sacks of Portland cement, furnished to Hildebrand and used in the construction of steps to the front porch of the house. Building the steps was the last work done in performance of the contract. Brinkmeyer contended he furnished the cement, but that issue of fact was determined against him. If building the steps was not within the scope of the contract the lien statement was filed too late.

The contract was oral, and was indefinite as to details, but included some drawings and some estimates for improvement of the house. While the work was in progress the plans were changed at the suggestion of both owner and contractor, and more than a year elapsed from the time the improvement was commenced to the time it was completed. Brinkmeyer testified the plans did not show steps leading to the front porch, and he had no conversation with Hildebrand with reference to building the steps; one day he discovered

Juries, 35 C. J. p. 164 n. 86. Mechanics' Liens, 40 C. J. pp. 326 n. 76, 477 n. 64, 516 n. 37.

Hildebrand's workmen engaged in constructing forms for the steps, and carried to them some material which they used in making side supports; but he had no conversation about building the steps. On the basis of this testimony Brinkmeyer requested the court to instruct the jury as follows:

"The time for the filing of a lien cannot be extended by furnishing material for the construction of any part which was not in the original contract, and which the owner does not demand as a condition of the completion of the contract. A mere request or wish that an act be done cannot be the foundation of the extension of the time for filing a lien.

"The jury is instructed that the time for filing a lien by a materialman cannot be extended by furnishing material or performing labor as a friendly act of accommodation, but such labor or material must have been furnished according to the original contract or according to an agreement properly entered into."

The court refused to give the instructions, which were based on the opinion in the case of *White Lumber Co. v. Fulton, Adm'r,* 116 Kan. 694, 229 Pac. 363, and the refusal is assigned as error.

The action was not one in which a jury was demandable of right, and presumably the jury was called under the statute requiring the court to try the issues of fact, subject to power of the court to send specific issues to the jury. (R. S. 60-2903.) The extent to which the advice of the jury may be taken in such cases rests, of course, entirely with the court. The abstract does not show what issues of fact were submitted to the jury. The copy of the journal entry of judgment filed in this court in connection with the appeal shows special questions were submitted to the jury, which were answered, but does not show the questions and answers. The court was authorized to determine for itself whether the steps were constructed pursuant to the original contract, or as an extra, essential to completion of the improvement, or were constructed pursuant to mere request or wish and as a friendly act of accommodation. Having determined the issue, the court could apply the law. If the issue of fact were submitted to the jury, the court could apply the law to the facts found, and the instructions were not necessary to enable the jury to find the facts. Unless the court submitted to the jury not merely the question of fact, but the legal question of lien as dependent on arrangement or lack of arrangement under which the steps were constructed, the instructions had no office to perform. So far as the abstract discloses, the instructions had no office to perform, and error in refusing them does not appear.

As indicated, Brinkmeyer testified the plans did not show steps

leading to the front porch, and testified there was no talk with Hildebrand about building the steps. No testimony is abstracted except the testimony of Brinkmeyer and his wife. The lumber company asserts, and the Brinkmeyers do not deny, that no transcript was made of any testimony except that of Brinkmeyer and his wife, although other witnesses testified. The lumber company asserts, and the Brinkmeyers do not deny, that there was conflicting evidence on every material question raised by their abstract or brief. It may be assumed the court believed the testimony relating to scope of the original contract and relating to conversations respecting building the porch steps which contradicted the testimony given by Brinkmeyer.

It is not contended the steps were not necessary to completion of the improvement. Mrs. Brinkmeyer testified that when the contractor and the workmen came to work on the house on October 5, she told them Brinkmeyer said he would rather they put in the steps instead of the framework. This testimony clearly indicates that building the steps was understood to be part of the work on the uncompleted improvement, and Brinkmeyer desired it should be done before other work. Brinkmeyer does not deny telling his wife what she said he said. Besides that, Brinkmeyer testified on cross-examination as follows:

"They, Hildebrand and Summers, finished chimney about 4 o'clock. I was helping them. Then they put in the side walls for the steps, and I helped them. Some hard rock was broken up to be used in the steps, but no cement or rock was put in the steps that day. They just put in the sustaining or retaining walls and cement over the top of them that day. I helped them on the steps, and I quit about 5 o'clock. I expected them back soon to finish the steps, did not figure on letting them leave those steps remain in that condition."

This testimony is not found in Brinkmeyer's partial abstract, but appears in the partial transcript. The contractor did return, and did finish the steps on October 20. Without debating the matter, it is manifest the court was privileged to regard the notion of voluntary work done by way of friendly accommodation as not worthy of serious consideration.

Brinkmeyer contends the court was not authorized to determine the issue of fact, but was obliged to submit the issue to the jury, no matter how great the conflict in the testimony. The contention is unsound, because the action was one to foreclose a lien, not to recover money or specific real or personal property. The court was not obliged to call a jury at all, or to submit any particular issue of

fact to the jury which was called, and was not bound by the jury's determination of any issue of fact submitted to it. (35 C. J. 164; *Epp v. Hinton*, 102 Kan. 435, 438, 170 Pac. 987; Annotations to R. S. 60-2903.)

At the beginning of the trial the Brinkmeyers amended their answer by inserting the following paragraph:

"3. Defendants allege that about September, 1925, or after, at the office of plaintiff in Hill City, Kan., the manager of the plaintiff company, L. J. Wolfe, said to O. L. Brinkmeyer, the defendant herein, pay to C. H. Hildebrand whatever amount or balance due to him on this contract, and that the said manager did not request the money to be paid to the said company, and said not to pay the company, but to pay Hildebrand."

A demurrer was sustained to the amendment. At the hearing on the motion for new trial evidence was produced tending to sustain the allegations of the amendment. In support of a contention that the court erred in sustaining the demurrer, the following is quoted from 40 C. J. 325:

"A subcontractor or materialman is estopped to assert a lien where the owner has settled with the contractor, or made payments to the contractor or other subcontractors, in reliance upon the subcontractor's or materialman's receipt for the amount due him, his statement that he has been paid by the contractor, his representation that he will not look to the owner for payment of work performed or materials furnished, or his direction, authorization, or expressed desire that payment be made to the contractor."

The quotation should be completed by adding the next sentence of the text:

"The estoppel created by the foregoing matters is coëxtensive with the amount of money paid by the owner in reliance thereon, . . ." (40 C. J. 326.)

In this instance, neither pleading nor proof disclosed that Brinkmeyer paid Hildebrand anything pursuant to the conversation with the lumber company's manager. Estoppel may not be employed to secure advantage or to fortify gain. Its office is to protect from loss consequent on change of position in reliance on representation or other inducement, and the observations of the court in *Jacquart v. Jennings*, 118 Kan. 224, 235 Pac. 101, apply here:

"The defendants gave nothing; they lost nothing; they had everything, every right afterward that they had before the statements were made by the plaintiff. There is nothing on which to hang an estoppel." (p. 227.)

The judgment of the district court is affirmed.